# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE L. FLOYD, et al., | ) | CASE NO. 1:13-cv-2072 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND OPINION |
| BANK OF AMERICA, N.A., et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion to dismiss filed by defendant Lerner Sampson & Rothfuss ("LSR"). (Doc. No. 12.) Also before the Court are the motions to dismiss filed by defendant Law Offices of John D. Clunk Co., L.P.A. ("JDC") (Doc. No. 15) and by defendants Bank of America, N.A. ("BANA"), Bank of New York Mellon Trust Company, N.A. ("BONY"), and the Bank of New York Mellon fka the Bank of New York as Trustee for the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates Series 2006-5 ("BONY as Trustee") (collectively, "the Bank") (Doc. No. 17). Plaintiffs Willie L. Floyd and Doris M. Floyd ("the Floyds" or "plaintiffs") have opposed each motion to dismiss. (Doc. Nos. 19, 24, and 25, respectively), and all defendants have replied (Doc. Nos. 22, 28, and 27, respectively).

## I.      Factual and Procedural Background

On January 6, 2006, plaintiffs executed a note made payable to America's Wholesale Lender ("AWL") in the amount of $50,850, secured by a mortgage executed the same day on a piece of real property located at 15506 Eldamere Avenue in Cleveland, Ohio ("the

property"). (Compl., Doc. No. 1-1 at ¶¶ 3, 10, 11.) After plaintiffs defaulted, BONY as Trustee, represented by LSR, filed a foreclosure complaint against plaintiffs on October 13, 2009, in the Cuyahoga County Court of Common Pleas ("the '09 foreclosure"). (*Id*. at ¶¶ 12, 13.)

In the initial '09 foreclosure complaint, BONY as Trustee stated that the original and copies of the note payable to AWL "are currently lost." (*Id*. at ¶ 14.) The complaint did include an assignment of mortgage, prepared by LSR and executed by LSR employee Shellie Hill, on or about October 7, 2009, and filed October 9, 2009, purportedly transferring an interest in the mortgage from Mortgage Electronic Registration Systems, Inc. as nominee for AWL to BONY as Trustee ("the '09 assignment"). (*Id*. at ¶¶ 15-17; Ex. A, *id*. at 20.)

BONY as Trustee later filed an amended complaint and a second amended complaint in the '09 foreclosure. In both amended complaints, BONY as Trustee attached the previously "lost" note, now certified as a true and correct copy of the original. (*Id*. at ¶¶ 20, 22, 30; Ex. B, *id*. at 22.) No endorsement appeared on these notes. (*Id*. at ¶ 20.) Both amended complaints in the '09 foreclosure also included an allonge transferring the note from AWL to BONY as Trustee, executed by Donald Clark, an assistant vice president of AWL. (*Id*. at ¶ 20; Ex. B, *id.* at 25.) BONY as Trustee dismissed the '09 foreclosure action without prejudice on March 5, 2012. (*Id*. at ¶ 24.)

Represented by JDC, BONY as Trustee filed a second foreclosure complaint against the Floyds on August 22, 2012, in the Cuyahoga County Court of Common Pleas ("the '12 foreclosure"). (*Id*. at ¶¶ 25, 26.) Unlike the notes filed in the '09 foreclosure, the note filed in the '12 foreclosure contained an endorsement in blank executed by David A. Spector on behalf of AWL. (*Id*. at ¶ 28; Ex. C, *id.* at 28.) Also attached to the '12 foreclosure complaint were an

allonge transferring the note from AWL to BONY as Trustee executed on behalf of AWL by Vice President Melissa Viveros (*id*. at ¶ 33; Ex. C, *id*. at 29), and a corrective assignment of mortgage executed on May 24, 2012, and filed June 15, 2012, transferring the mortgage from AWL to BONY as Trustee ("the '12 assignment"). (*Id*. at ¶ 29; Ex. D, *id*. at 30.)

The Floyds allege that the transfers described above were invalid and fraudulent. First, plaintiffs allege that Spector left AWL in 2006. (*Id*. at ¶ 35; Ex. E, *id*. at 32.) Spector's endorsement in blank did not appear on the note attached to the '09 foreclosure complaint (*id*. at ¶ 20), appearing for the first time in the '12 foreclosure, long after Spector left AWL's employ. (*Id*. at ¶¶ 34-35.) Accordingly, the Floyds allege that "the endorsement . . . was and is invalid and fraudulent because David A. Spector was not employed by [AWL] at the time of the endorsement sometime after the [c]omplaint was filed on or about October 13, 2009." (*Id*. at ¶ 36.) Second, plaintiffs allege that BONY as Trustee, the assignee of the note and mortgage, "had a closing date of March 28, 2006." (*Id*. at ¶ 38.) Whether by the '09 or '12 assignment of the mortgage, BONY as Trustee "never obtained any interest in the mortgage as the [a]ssignment failed to properly transfer any interest in the trust because it failed to comply with the terms of the governing instruments of the Trust." (*Id*. at ¶ 40.) In short, the Floyds allege that BONY as Trustee, by directing JDC to file the '12 foreclosure, attempted to collect a debt that BONY as Trustee did not own and in which it had no interest. (*Id*. at ¶ 41.)

The Floyds assert five claims based on the events described above, the first two against the Bank and JDC, and the final three against all defendants: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Ohio Consumer Sales Protection Act ("OCSPA"); (3) common law fraud; (4) civil conspiracy to violate Ohio Rev. Code §

2923.32(A)(2), the Ohio RICO statute; and (5) engaging in a pattern of corrupt activity in violation of the Ohio RICO statute. (*See id*. at ¶¶ 44-88.)

## II.     Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)), and a court considering such matters must convert the motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Further, a court is not precluded from considering unauthenticated documents on a motion to dismiss where the opposing party "do[es] not question the substantive validity, accuracy, or completeness of the documents." *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 642 (N.D. Ohio 2012) (citations omitted).

### III.    Fair Debt Collection Practices Act

The Floyds allege that the Bank and JDC's actions in the '12 foreclosure violated the following FDCPA provisions:

   a. § [1692d]—Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person;

   b. § [1692e]—Making any false, deceptive, or misleading representation or manes in connection with the debt collection;

   c. § [1692e(2)]—Misrepresenting the character, amount, or legal status of the alleged debt;

   d. § [1692f]—Engaging in any unfair or unconscionable means to collect or attempt to collect the alleged debt; and,

5

     e.  § [1692f(1)]—Engaging in an attempt to collect any amount not authorized by the agreement creating the debt or permitted by law.

(*Id*. at ¶ 48.) According to plaintiffs, the Bank, through JDC, attempted to collect a debt in which it had no interest, thereby harming the Floyds.

       Before addressing the merits of the FDCPA claims, the Bank and JDC allege that the Floyds lack standing to assert claims related to the fraudulent assignment of their loan from AWL to BONY as Trustee. (Doc. No. 17 at 332; Doc. No. 15-1 at 189-92.)[1] In support, the Bank and JDC cite district court decisions holding that plaintiffs lack standing to bring various claims, including FDCPA claims, when they are based upon fraudulent assignments to which plaintiffs were not parties. *See, e.g.*, *Slorp v. Lerner, Sampson & Rothfuss*, No. 2:12-cv-498, 2013 WL 941430, at *3 (S.D. Ohio Mar. 8, 2013); *Clark v. Lender Processing Servs., Inc.*, 949 F. Supp. 2d 763, 771 (N.D. Ohio 2013), *aff'd* -- F. App'x --, 2014 WL 1408891 (6th Cir. Apr. 14, 2014).

       Plaintiffs assert that they have standing, citing *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir. 2012), and *Fuller v. Lerner, Sampson, Rothfuss, L.P.A.*, No. 1:10 CV 2453, 2012 WL 4361448 (N.D. Ohio Sept. 21, 2012). In *Wallace*, the Sixth Circuit reversed dismissal of plaintiff's FDCPA claims. In her complaint, Wallace claimed that Washington Mutual initiated foreclosure proceedings against her, even though transfer of her note and mortgage to Washington Mutual had not yet occurred. 683 F.3d at 325. The Sixth Circuit ruled that plaintiff had stated a cause of action under the FDCPA, specifically, "that a clearly false representation of the creditor's name may constitute a false representation . . . to collect or attempt to collect any debt under Section 1692e." *Id*. at 327 (citations and quotation marks

---

[1] Defendant LSR also asserts two threshold bases to dismiss plaintiffs' complaint: judicial estoppel due to the bankruptcy proceeding and attorney immunity. (Doc. No. 12 at 80-83.) The Court need not address these threshold arguments because the Floyds' claims against LSR each fail for other reasons, discussed *infra*.

omitted).

        In a recent FDCPA case arising from fraudulent assignments and transfers that preceded a foreclosure, the Sixth Circuit pivoted away from plaintiff's standing to focus on defendant's conduct. *See Clark v. Lender Processing Servs.*, -- F. App'x --, 2014 WL 1408891 (6th Cir. Apr. 14, 2014). At the time of the foreclosure filing in *Clark*, defendants possessed a negotiable instrument endorsed in blank and were therefore entitled to initiate foreclosure proceedings under Ohio law. *Id.* at *5 (citing *Deutsche Bank Nat'l Trust Co. v. Najar*, No. 98502, 2013 WL 1791372, at *6 (Ohio Ct. App. Apr. 25, 2013) ("When an instrument is endorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone[.]")). The court observed that "where the only misleading aspect of a communication or statement is that the statement implies that the lender has standing to foreclose when it did not, whether or not the lender does in fact have the right to foreclose appears to settle the matter." *Id*. Because defendants had standing to foreclose, they could not have made the alleged misrepresentation to plaintiff.

        As in *Clark*, the sole FDCPA violation asserted by the Floyds is defendants' attempt to foreclose without standing to do so, owing to various fraudulent assignments, particularly the assignment of the mortgage to a trust after the trust's closing date. Plaintiffs do not advance any other theory for relief, e.g., that they had timely made their mortgage payments but defendants nonetheless brought foreclosure proceedings. Accordingly, as in *Clark*, whether BONY as Trustee had the right to foreclose "appears to settle the matter." *Clark*, 2014 WL 1408891, at *5. At the time of the foreclosures, BONY as Trustee had standing to foreclose because it possessed the note endorsed in blank, attaching it to the foreclosure complaint.

(Compl. at ¶ 27; Ex. C, *id*. at 26.) Additionally, BONY as Trustee possessed an assignment of mortgage, also attaching it to the foreclosure complaint. (Compl. at ¶ 28; Ex. D., *id*. at 30.) Under Ohio law, BONY as Trustee had standing to foreclose in state court and therefore did not mislead plaintiffs under the FDCPA by asserting that it did.

The facts in this case differ from *Clark* in that, over and above the transfer "shenanigans" alleged in the complaint, the underlying trust had a closing date of March 28, 2006, well before the events described in the complaint. (Compl. at ¶¶ 38-39.) According to plaintiffs, BONY as Trustee violated the FDCPA by attempting to collect a mortgage debt in which the underlying trust had no interest. (*Id*. at ¶¶ 40-41.) Whether or not the trust violated its own governing terms is ultimately irrelevant because plaintiffs lack standing to challenge such violations. *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (plaintiff lacked standing to assert that assignments were invalid because trust did not exist on date of assignment). Plaintiffs do not allege that they are contracting parties or third-party beneficiaries to the trust documents, and accordingly have no standing to invoke violations of said documents. *See, e.g.*, *Waterfall Victoria Master Fund Ltd. v. Yeager*, No. 2012-L-071, 2013 WL 3833467, at *5 (Ohio Ct. App. July 22, 2013); *Deutsche Bank Nat'l Trust Co. v. Rudolph*, No. 98383, 2012 WL 6727811, at *4 (Ohio Ct. App. Dec. 27, 2012).

Even if defendants had misled plaintiffs, they did not properly plead that their mortgage debt constituted consumer debt for purposes of the FDCPA. (Doc. No. 15 at 192; Doc. No. 17 at 336.) Specifically, the Bank and JDC note that the Floyds filed for Chapter 7 bankruptcy in 2011 and listed the property on the bankruptcy petition as rental property. (Ch. 7

Petition, Doc. No. 15-2 at 225, 230.) According to defendants, debts associated with rental property constitute commercial debts, not consumer debts, rendering the FDCPA inapplicable. Nor have the Floyds, according to defendants, shown that BONY as Trustee qualifies as a "debt collector." (Doc. No. 17 at 336.)

The provisions of the FDCPA at issue—§§ 1692d, 1692e, and 1692f—prohibit debt collectors from engaging in certain practices in connection with collecting a debt. Section 1692d disallows harassing, oppressing, or abusive conduct in connection with the collection of a debt. Section 1692e prohibits a debt collector from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Finally, § 1692f prohibits using "unfair or unconscionable means to collect or attempt to collect any debt." To succeed on any of these claims, plaintiff must have first incurred a "debt," defined by the statute as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

A mortgage is a debt, and "mortgage foreclosure is debt collection under the [FDCPA,]" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 464 (6th Cir. 2013), provided that the mortgage was incurred for personal, family, or household purposes. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 928 (N.D. Ohio 2009) (citing 15 U.S.C. § 1692a(5)). If, however, plaintiff incurred the debt to purchase commercial real estate, *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995), or rental properties, *see, e.g., Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2012 WL 715270, at *5 (E.D. Tenn. Mar. 1, 2012), *Kafele v.*

9

*Shapiro & Felty, L.L.P.*, No. 2:03-CV-886, 2006 WL 783457, at *5 (S.D. Ohio Mar. 27, 2006), plaintiff's mortgage does not constitute FDCPA "debt."

To determine whether the mortgage debt qualifies as FDCPA debt, a court should consider the purpose of the debt at the time of its creation. *Hunter*, 2012 WL 715270, at *2 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000)). If plaintiff incurred a mortgage "primarily to generate income as rental property," the mortgage is not—and cannot be transformed into—FDCPA debt. *See Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 767 (S.D. Ohio 2013). Even if plaintiff resides on the rental property sometime after acquisition, plaintiff's personal use of the property does not alter the commercial character of the transaction creating the debt obligation.

In their complaint, the Floyds allege, without elaboration, that "[m]ortgage loans are debts, as defined in 15 U.S.C. [§ 1692a(5).]" (Compl. at ¶ 46.) The complaint does not state whether the Floyds incurred the mortgage loan to use the property as rental property or as a residence. Defendants, meanwhile, have provided the Floyds' Chapter 7 bankruptcy petition, which repeatedly refers to the property as rental property. (*See* Ch. 7 Petition at 225, 230.) Opposing dismissal of their FDCPA claims, the Floyds allege that "[w]hen [they] signed the note and mortgage[,] it was a consumer loan[,] and [t]he Floyds lived in the home as their primary residence." (*See, e.g.*, Doc. No. 25 at 495.)

The Floyds simply did not allege in their complaint that they incurred their mortgage loan primarily for personal, family, or household purposes. The Chapter 7 bankruptcy petition in 2010, contrary to defendants' position, on its face shows only that the Floyds used the property as a rental property at the time of the petition. Neither the petition nor the complaint

shed any light on the purpose for which the Floyds initially incurred mortgage debt on the property in 2006. By omitting the purpose for which they obtained the mortgage on the property, the Floyds have not adequately alleged that they incurred an FDCPA "debt."[2]

For all the reasons discussed above, the Floyds' FDCPA claims are dismissed.

## IV.  Ohio Consumer Sales Protection Act

Next, the Floyds allege that the Bank and JDC violated Ohio Rev. Code § 1345.02, which prohibits unfair or deceptive acts or practices by suppliers in connection with consumer transactions, by "making a false representation that [p]laintiffs owed a legal obligation to [the Bank.]" (Compl. at ¶ 54.) The Floyds further claim that defendants' debt collection practices that violated the FDCPA "also constitute unfair and deceptive practices in violation of the OCSPA." (*Id*. at ¶ 53.)

JDC and the Bank each seek dismissal of the OCSPA claim, asserting that no "consumer transaction," as defined in the OCSPA, occurred in this case and that none of the defendants qualifies as an OCSPA "supplier." (Doc. No. 15-1 at 194-97; Doc. No. 17 at 337-38.)

The OCSPA prohibits suppliers from committing "an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). The statute further defines "consumer transaction" and "supplier." For purposes of the OCSPA, a "'consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are

---

[2] Ordinarily, the Court would permit plaintiffs to amend their complaint to properly allege (if true) that their mortgage loan constitutes consumer debt; however, such amendment would be futile. As set forth above, the only misleading statement allegedly made by BONY as Trustee was that it had standing to foreclose. Possessing both the note endorsed in blank and the assignment of mortgage, BONY as Trustee had standing. If plaintiffs were given leave to amend, they still could not point to a misleading statement made by defendants for purposes of the FDCPA.

primarily personal, family, or household[.]" Ohio Rev. Code § 1345.01(A). The statute defines a "supplier" as:

> a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer. If the consumer transaction is in connection with a residential mortgage, "supplier" does not include an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code. For purposes of this division, in a consumer transaction in connection with a residential mortgage, "seller" means a loan officer, mortgage broker, or nonbank mortgage lender.

Ohio Rev. Code § 1345.01(C).

The OCSPA contains exceptions, one of which applies to this case. Transactions between financial institutions, namely, "national bank[s] organized and existing as [] national bank association[s] pursuant to the 'National Bank Act,' 12 U.S.C. [§] 21[,]" Ohio Rev. Code § 5725.01(A)(1), and their customers do not fall within the ambit of the OCSPA. Ohio Rev. Code § 1345.01(A). Further, when a law firm directly represents an exempt financial institution in debt collection, the OCSPA does not apply. *See Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945, 956 (S.D. Ohio 2007) (OCSPA claim "would not lie against" a law firm "directly represent[ing]" a financial institution "in attempting to collect [a] debt"); *see also DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12CV1705, 2012 WL 5996431, at *3 (N.D. Ohio Nov. 30, 2012) (same).

The Ohio Supreme Court recently lent support for the conclusion that law firms representing exempt financial institutions in debt collection also enjoy exemption from OCSPA liability. *See Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013). In *Anderson*, an exempt financial institution hired a mortgage servicer, who was subsequently sued

12

for OCSPA violations by a homeowner. The court concluded that the OCSPA did not apply to the mortgage servicer because "the servicing of a borrower's residential mortgage loan is not a 'consumer transaction' as defined in R.C. 1345.01(A). The statute simply cannot be read to cover instances in which a financial institution contracts with an entity to service its loans and mortgages." *Id.* at 1001. Stated differently, an exempt transaction between a financial institution and its customer does not mutate into an OCSPA-triggering "consumer transaction" because the financial institution hires a mortgage servicer. While *Anderson* addressed mortgage servicers only, its reasoning extends to other entities, such as law firms, hired by financial institutions "to manage the foreclosure process." *Clark*, 2014 WL 1408891, at *7 (finding OCSPA inapplicable to loan processors and law firms representing financial institutions bringing foreclosure actions).

Here, the Floyds have asserted OCSPA claims against the Bank, an exempt financial institution, and JDC, a law firm directly representing the exempt financial institution in the '12 foreclosure. As outlined above, these defendants are exempt from OCSPA liability, and the Floyds's OCSPA claim must be dismissed.

The Floyds do not seriously dispute the above reasoning. Instead, they assert that because the Bank and JDC violated the FDCPA, they have per se violated the OCSPA as well. The Court shall address this argument briefly. The Floyds have pointed to some authority that indicates that FDCPA violations necessarily trigger OCSPA violations. *See, e.g.*, *Hagy v. Demers & Adams, LLC*, No. 2:11-cv-530, 2013 WL 434053, at *10 (S.D. Ohio Feb. 5, 2013) (noting that OCSPA and FDCPA prohibit "the same conduct"); *Becker v. Montgomery, Lynch*, No. Civ.A. 1:02CV 874, 2003 WL 23335929, at *2 (N.D. Ohio Feb. 26, 2003) (holding that "any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and

13

deceptive act or practice in violation of R.C. § 1345.02"); *Liggins v. May Co.*, 373 N.E.2d 404, 406 (Ohio Ct. Common Pleas 1977) (holding that federal debt collection practices cases are "particularly relevant" given similarities between the federal statute and OCSPA). Even if FDCPA violations necessarily constitute unfair or deceptive acts in violation of the OCSPA, two other OCSPA elements remain. Plaintiff still must show that defendant is a "supplier" and that the unfair or deceptive act occurred in connection with a "consumer transaction." Ohio Rev. Code § 1345.02. Here, the Floyds have not shown that a consumer transaction has occurred, and their OCSPA claim is dismissed.

### V.      Common Law Fraud

Plaintiffs assert a common law fraud claim against all the defendants, who "fraudulently created endorsements and mismatching allonges to mislead [p]laintiffs and court officials into believing" that BONY as Trustee could foreclose on the property. (Compl. at ¶ 66.) In reliance on these fraudulent endorsements, the Floyds claim that they "executed a loan modification agreement with [BONY], on or about January 10, 2013[,]"[3] and were subsequently damaged by paying on this modification, among other injuries. (*Id.* at ¶¶ 72-73.)

Defendants move to dismiss this claim, arguing that, because defendants filed the fraudulent assignments, endorsements, and allonges in the foreclosure cases, the state court, not the Floyds, was the defrauded party. (Doc. No. 12 at 85-86; Doc. No. 15-1 at 198-99; Doc. No. 17 at 340.) Additionally, LSR and the Bank allege that the Floyds cannot show reliance on the fraudulent endorsements and assignments. (Doc. No. 12 at 86; Doc. No. 17 at 341.)

In Ohio, "[a] claim for common-law fraud requires proof of the following

---

[3] This date appears to be a typo. The loan modification agreement was executed by plaintiffs on January 11, 2010, and filed on November 4, 2011. (Ex. F., Doc. No. 1-1.)

elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *CitiMortgage, Inc. v. Hoge*, 962 N.E.2d 327, 333 (Ohio Ct. App. 2011) (citation and quotation marks omitted). Plaintiff must plead each element with particularity pursuant to Rule 9(B) of the Ohio Rules of Civil Procedure. *Sutton Funding, L.L.C. v. Herres*, 936 N.E.2d 574, 582 (Ohio Ct. App. 2010).

"A party is unable to maintain an action for fraud where the fraudulent representations were not made directly to him to induce him to act on them in matters affecting his own interests." *Baddour v. Fox*, No. 03CA-77, 2004 WL 1327925, at *4 (Ohio Ct. App. June 4, 2004); *see also Moses v. Sterling Commerce Am., Inc.*, No. 02AP-161, 2002 WL 1938575, at *3 (Ohio Ct. App. Aug. 15, 2002) ("The elements of fraud must be directed against the alleged victim."). Using this principle, courts have consistently found that fraudulent documents filed in foreclosure cases perpetrate fraud on the foreclosure court, not the foreclosure defendant. *See, e.g.*, *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, No. 2:11-cv-274, 2013 WL 210729, at *5 (S.D. Ohio Jan. 18, 2013) (collecting cases); *Smith v. Amerihome Mortg. Corp.*, No. 2:12-cv-556, 2012 WL 5902913, at *3 (S.D. Ohio Nov. 26, 2012); *DeJohn*, 2012 WL 6154800, at *4.

Here, the Floyds allege that defendants made fraudulent endorsements and allonges and filed them in the foreclosure cases. (Compl. at ¶¶ 66-69.) As stated above, these

15

endorsements and allonges were directed to the foreclosure court, inducing it to grant defendants

the relief they sought. As a matter of law, the Floyds have not stated a valid cause of action for

fraud because they have not alleged a fraudulent representation aimed at them. The Floyds' fraud

claim must be dismissed, and the Court need not address defendants' justifiable reliance

argument.

**VI.    Engaging in a Pattern of Corrupt Activity (Ohio RICO)**

The Floyds claim that all defendants engaged in a pattern of corrupt activity,

defined in Ohio Rev. Code § 2923.32, by repeatedly violating the Ohio intimidation statute, Ohio

Rev. Code § 2921.03.[4] According to the Floyds, by knowingly filing fraudulent documents in the

Cuyahoga County Recorder's Office, defendants have, in bad faith, or in a wanton or reckless

manner, influenced public officials in the discharge of their official duties. (Compl. at ¶¶ 83-84.)

By using these fraudulent documents in "two or more foreclosures throughout the state of

Ohio[,]" defendants have engaged in a pattern of corrupt activity. (*Id.* at ¶ 85.)

Seeking to dismiss these claims, defendants assert that the Floyds did not plead

that an enterprise or structure existed between the defendants—a necessary component to the

claim. (Doc. No. 12 at 91-92; Doc. No. 15-1 at 201-02; Doc. No. 17 at 346-47.) Nor did the

---

[4] The statute provides:

    (A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.

    (B) Whoever violates this section is guilty of intimidation, a felony of the third degree.

    (C) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section.

Ohio Rev. Code § 2921.03.

Floyds properly plead a pattern of corrupt activity, according to LSR and the Bank. (Doc. No. 12 at 90-91; Doc. No. 17 at 346.)[5]

The Ohio RICO statute provides: "No person, through a pattern of corrupt activity or the collection of unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property." Ohio Rev. Code § 2923.32(A)(2). To state a claim under the Ohio RICO statute, plaintiff must plead the following elements with specificity: "(1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Ogle v. BAC Home Loans Servicing, Inc.*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013) (citing *Kondrat v. Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997)).

Under the first element, the intimidation statute, Ohio Rev. Code § 2921.03, qualifies as one of the specifically prohibited state or federal criminal offenses. Ohio Rev. Code § 2923.31(I)(2)(a).

Under the second element, a "'pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." Ohio Rev. Code § 2923.31(E). While the predicate crimes ought to be related, "a single scheme of narrow scope" containing "a

---

[5] JDC incorrectly alleges that the Floyds' claim must be dismissed because "a civil action under [§ 2923.32] cannot be advanced without a conviction for the underlying criminal act[.]" (Doc. No. 15-1 at 200.) Though not cited by plaintiffs, Ohio Rev. Code. § 2923.34 provides a civil cause of action for violations of § 2923.32, and a conviction under the latter statute is not a prerequisite to a civil suit under the former. *Baxter v. Jones*, 614 N.E.2d 1094, 1097 (Ohio Ct. App. 1992).

single type of predicate act" to accomplish a single objective and causing a single type of injury does not state claim under the Ohio RICO statute. *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 710 (Ohio Ct. App. 2009) (citing *B.J. Skin & Nail Care, Inc. v. Int'l Cosmetic Exchange, Inc.*, 641 F. Supp. 563, 566 (D. Conn. 1986)) ("Where there is only one purpose, one result, one set of participants, one victim, and one method of commission, there is no continuity and therefore no pattern.").

Finally, under the third element, an "'enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." Ohio Rev. Code § 2923.31(C). When alleging an "association in fact" enterprise, plaintiff must plead one of the following: "(1) an ongoing organization with a commonality of purpose or a guiding mechanism to direct the organization; (2) a continuing unit with an ascertainable structure; or (3) an organizational structure distinct from the pattern of predicate acts." *Herakovic v. Catholic Diocese of Cleveland*, No. 85467, 2005 WL 3007145, at *4 (Ohio Ct. App. Nov. 10, 2005). While the enterprise can be formal or informal, plaintiff must plead "that the association in fact had a shared purpose, continuity, unity, an identifiable structure, and some goals separate from the predicate acts themselves." *Id.* at *5; *see also State v. Franklin*, Nos. 24011, 24012, 2011 WL 6920727, at *17 (Ohio Ct. App. Dec. 30, 2011) (enterprise is separate and apart from pattern of activity in which it engages).

Even assuming that the Floyds have properly alleged the first element of an Ohio RICO claim, i.e., commission of two or more specified offenses, the Floyds have not properly

18

pled the second and third elements. Under the second element, their allegations of a pattern of corrupt activity start and end with the two foreclosure cases against the Floyds, a single type of act, with the single goal of foreclosing on the property that caused a single type of injury. *See Morrow*, 915 N.E.2d at 710 (pattern of corrupt activity element not satisfied when plaintiff alleged single type of corrupt act performed the same way against the same victim). Under Ohio precedent, such limited conduct does not invoke the Ohio RICO statute. Additionally, the Floyds have not alleged, even in cursory fashion, the third element—an enterprise. Neither "enterprise" nor "association in fact" appears in the complaint, and the Floyds make no allegations that defendants, as an association in fact, "functioned as a continuing unit with an identifiable structure and goals separate from the alleged predicate acts." *Morrow*, 915 N.E.2d at 711.

Even construing their complaint as true, the Floyds have not alleged a cause of action for engaging in a pattern of corrupt activity, and this claim must be dismissed.

**VII.    Civil Conspiracy**

Finally, plaintiffs allege that all defendants engaged in a civil conspiracy "in making and utilizing fraudulent misrepresentations to utilize deception to collect a debt that they are fully aware not to be due and owing to said defendants." (Compl. at ¶ 76.)

Seeking dismissal of this claim, defendants assert that the Floyds have not pled any unlawful act independent of the conspiracy. (Doc. No. 12 at 88-89; Doc. No. 15-1 at 203; Doc. No. 17 at 343.) LSR and JDC both argue that law firms, as a matter of law, cannot conspire with their clients when acting within the bounds of the attorney-client relationship. (Doc. No. 12 at 87; Doc. No. 15-1 at 203.) The Bank argues that the Floyds did not plead this claim with particularity, as required by Ohio law. (Doc. No. 17 at 342.)

19

"Under Ohio law, the elements of civil conspiracy are: (1) a malicious combination of two or more persons; (2) causing injury to person or property; (3) the existence of an unlawful act which is independent from the conspiracy itself; and (4) damages." *Ogle*, 924 F. Supp. 2d at 914 (citing *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996)). Plaintiff must plead a conspiracy claim "with some degree of specificity[,] and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Wuliger v. Keybank Nat'l Ass'n*, No. 3:02 CV 2160, 2006 WL 42186, at *6 (N.D. Ohio Jan. 6, 2006). Further, conspiracy claims in Ohio are "derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow*, 915 N.E.2d at 711-12 (citations omitted).

Although the Floyds present a conclusory allegation regarding a conspiracy, they do not allege sufficient facts in support of the elements of the claim. *See Ogle*, 924 F. Supp. 2d at 914. Moreover, the Floyds have not shown an actionable underlying tort; therefore, they cannot maintain their civil conspiracy claim, which must be dismissed.

## VIII.   Conclusion

For the reasons set forth above, the Floyds have not stated any claim upon which relief can be granted. Each defendant's motion to dismiss is GRANTED, and this case is DISMISSED.

**IT IS SO ORDERED**.

Dated: July 25, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

20